BOLING (UNITED STATES v.). See Case No. 14,621.

## Case No. 1,609.

### The BOLIVAR.

[Olc. 474.] [1]

District Court, S. D. New York. March Term, 1847.

SEAMEN—WAGES—LIEN—DELAYED ENFORCEMENT — PROCEEDINGS IN REM — VESSEL NAVIGATING DOMESTIC WATERS OF A STATE—REMEDY IN THE MUNICIPAL COURTS — WHEN FEDERAL COURT WILL EXERCISE JURISDICTION.

1. A seaman cannot maintain an action in rem for wages on board a small sailing craft plying on the Hudson river between Troy, Bristol and the city of New-York, if at all, after a year from the sale of the vessel to a bona fide purchaser without notice of the outstanding wages, especially if the seaman was present and knowing of the sale.

[See The Bolivar, Case No. 1,610.]

2. A tacit lien is lost, or will be deemed waived by unreasonable delay in enforcing it. It will not be upheld in prejudice of an innocent purchaser in favor of a party who seeks to enforce it inequitably.

[Cited in The Bristol, 11 Fed. 163. Explained in The Pioneer, 21 Fed. 427. Cited in Southard v. Brady, 36 Fed. 561; Crosby v. The Lillie, 40 Fed. 368.]

[See The Bolivar, Case No. 1,610.]

[See The Admiral, Case No. 84; The Sea Lark, Id. 12,579; Packard v. The Louisa, Id. 10,652; The Lauretta, 9 Fed. 622.]

3. In many systems of jurisprudence secret liens are limited by positive law. They are rejected as stale in all others, when unreasonably delayed or concealed against good conscience and fair dealing.

4. When a seaman is hired to serve on a small vessel navigating the interior waters of the state, and he knows the residence and responsibility of the owner, he will be required to seek his remedy for wages in the municipal courts of the vicinage, at the risk of all costs if he arrests the vessel in this court.

5. This court may refuse to take cognizance of such case unless it be shown that the remedy in the local court is doubtful.

In admiralty. Augustus Josline, of Waterford, in this state, the libellant, alleges, that

on or about the 1st of June, 1845, he shipped at Troy, on board the scow Bolivar, as a second hand, at the rate of sixteen dollars a month; that said vessel was owned by James Rynders, the master, and was employed in carrying freight upon the tide waters of the Hudson river, between Troy, Bristol and the city of New-York; that he was employed at that rate from the time he shipped until July, 1845; that his wages amounted to $32, of which he had been paid $16, leaving a balance due him of $16. He further alleges that said vessel was owned by James Rynders, the captain thereof, who had sold her to Isaac Swangler, of Philadelphia; that said Swangler knew that libellant was employed as a hand on said vessel; that immediately after the sale of said vessel, she was taken out of the jurisdiction of this court, the libellant having been discharged from her. He prayed that the owner of said vessel may be decreed to pay him his wages due as aforesaid.

George Donner, the owner of the scow, in answer to the above claim says, that he purchased the vessel from Isaac Swangler; that he knows nothing of the claim of the libellant, and he alleges that he is informed and believes that on or about the 29th of July, 1845, when said Swangler had purchased the scow from Rynders her master and owner, the said master stated in presence of the crew, the libellant being present, that that was the last trip they would make with her, as on her return said Swangler would take possession of her as owner; and that there was no lien or incumbrance of any kind upon her; that neither of said crew dissented from this representation of said Rynders, or made any claim for wages, or that any was due. He further alleges, that on the return of the scow from Troy to Bristol, the said Swangler, or his agent went on board of her for the purpose of taking possession of her; that he conversed with the crew and libellant, telling them of his object; that neither libellant nor any of the crew made any demand or said any thing about wages, or intimated that any thing was due them from the vessel. He further alleges that said Rynders, at that time, and ever since, has been able to respond to any claim for wages due the libellant, and resides at Waterford, in the immediate vicinity of libellant. He further alleges that libellant has never made any claim of said Swangler or himself, previous to the filing of this libel, though said scow has been ever since running between Philadelphia and New-York, and that he purchased her without notice of any outstanding demand of libellant for wages against her, and believing her free of all liens for wages. Wherefore he prays that the libel be dismissed with costs. It appeared in evidence that the libellant shipped and served, as alleged by him, on board of the scow; and further, that the vessel was sold by her master and owner, bona fide, for a full consideration, to Swang-

---

[1] [Reported by Edward R. Olcott, Esq.]

ler, and by him to the present claimant; the sale took place in Bristol, Pennsylvania, with the knowledge of the libellant, who then made no claim for wages due him or gave any notice thereof, until more than a year after said sale. It also appeared in evidence that the libellant resided in the immediate neighborhood of Rynders, the former master and owner, and subsequently to the sale was employed in the same trade and between the same places as was this vessel for the residue of the season. [Libel dismissed.]

A. Benedict, for libellant.
R. Goodman, for claimant.

BETTS, District Judge. The point contested in this case is whether the libellant can maintain an action in rem for wages, upon the pleadings and proofs presented in the case. Under ordinary circumstances, a sale of a vessel will not divest the lien a mariner has against her for the security of his wages; and if the sale is by process of law, admiralty will uphold and enforce the lien against the proceeds of the vessel, wherever they may be found and identified. Sheppard v. Taylor, 5 Pet. [30 U. S.] 675. But it is necessary that seamen, as well as others, in order to uphold a tacit lien or privilege, should not intentionally conceal it to the prejudice of purchasers acquiring the property bona fide, and in ignorance of the incumbrance.

Wise and equitable provisions are introduced into some systems of jurisprudence limiting their continuance to fixed periods of time. In France and in Louisiana, the privilege upon the ship for the wages of the crew must be claimed and asserted before the ship has made a voyage, (in case of a sale,) in the name and at the risk of the purchaser. If such voyage is made without any claim being interposed by the crew, or if more than sixty days have elapsed between the departure and return of the vessel, she having been sold, the privilege is lost. Code de Comm. 191; Sirey, tom. 25, pt. 1, p. 207; Duranton des Privileges, liv. 3, tit. 18, §§ 2, 6, n. 133; Civ. Code La. arts. 3204, 3210; Terry v. Terry, 10 La. 75. So in Pennsylvania, the time of delay within which a seaman must assert his lien, is fixed by statute as nine months. 2 Laws Pa. 475. By the marine law there is no fixed period of time within which mariners must proceed to enforce their lien for wages, yet such lien will become extinct or barred by unreasonable delay, if the vessel passes into the hands of a bona fide purchaser, ignorant of such claim. 3 Kent, Comm. 196. Judge Ware remarks, it is not doubted that a seaman may lose his lien by lying by for a length of time, and suffering the vessel to be sold to a person ignorant of his claim, without giving him notice. The Eastern Star [Case No. 4,254]. And in Leland v. The Medora, it was held that liens for wages should in no case extend beyond the next voyage, if they are unknown to the public, and new interests of third persons as to the vessel intervene without notice. [Id. 8,237.] In the case of Packard v. The Louisa, Judge Woodbury animadverts strongly upon the equities of innocent parties in opposition to secret and stale liens. He says, to allow a seaman, after his voyage is over and his contract ended and his connection with the vessel dissolved and he has embarked for years in employment elsewhere, to retain a secret lien on the vessel, and thus prevent her sale or use unincumbered and embarrass any new purchaser without notice would be very bad policy. [Id. 10,652.]

If the claimant in this case had either actual or constructive notice of the claim of the libellant, he might have protected himself against it by requiring the vendor to extinguish it, or he could have withheld the amount from the purchase money. The conduct of the libellant was calculated to mislead and wrong him. He was present at the negotiation of sale, and was informed, in presence of the purchaser, that it had been made, yet permitted him to buy, without giving him notice there were wages in arrear. These considerations supply an equitable bar to the action in this form, treating it as brought by a mariner for services on a sea-going vessel.

The case is, however, to be considered in another point of view. The bargain for labor on this small craft had relation to services on the waters of the Hudson river, within this state, and was between men who were near neighbors, residing in the interior of the state, the seaman well knowing the responsibility of the master and owner of the vessel, and, except only by intendment of law, hiring himself no doubt solely trusting to that personal responsibility. There was an easy and cheap remedy at his command in the local courts against the owner for his wages, upon which he would naturally rely, and this court discourages actions in rem upon demands of this character, by denying all costs in them where they could be enforced in the municipal courts of the vicinage of the parties, and will even refuse to take cognizance of such demands in rem, unless it be proved that the remedy in the local courts is doubtful. For these reasons, the libel will be dismissed, with costs.

[NOTE. For another case substantially on the same state of facts, see Bouysson v. Miller, Case No. 1,710.]